UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHESTNUT HILL NY, INC. AND JOHN DOE #1, John Doe #2, AND
John DOE #3, and JOSEPH SANGIOVANNI

                      Plaintiffs,

      -against-                              Memorandum of Law
                                                             Civil Case No. 1:23-cv-01024

CITY OF KINGSTON, CITY OF KINGSTON                    (BKS-DJS)
OFFICE OF PLANNING, AND BUILDING SAFETY
AND ZONING ENFORCEMENT OF THE CITY
OF KINGSTON,

                      Defendants.

---

## Introduction

     Plaintiffs file this Memorandum of Law in support of their motion for a Temporary Restraining Order and Preliminary Injunction. This action is brought under the Fair Housing Act (FHA), as amended, 42 U.S.C. Sec. 3604 et seq., and Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. Sec. 12131 et seq., seeking an order that Defendants grant Plaintiff Chestnut Hill NY permission to continue operating a family Group Home at 106 W. Chestnut Street in the City of Kingston for handicapped and disabled persons, and allowing Plaintiffs Joe Doe #1, 2, & 3 to continue to reside in said premises along with other residents presently and in the future.....

     Chestnut Hill NY, INC. is a for-profit corporation under the laws of the State of New York with offices located 106 W. Chestnut Street, Kingston, NY. Starting in 1980 the principal in Chestnut Hill NY, Joseph Sangiovanni (hereafter Mr. Sangi), has with some interruption operated group homes for the Handicapped and the Disabled in the City of Kingston. On October 24, 2014 Mr. Sangi became the Manager of the Group Home at 106 W. Chestnut St., and in 2017 he became the owner of the premises.

     On July 17, 2023 defendant Office of Planning adopted a Resolution denying a renewal of a Special Permit granted April 15, 2019 and renewed each year thereafter. A Group Home has been functioning at that address for the benefit of the handicapped and disabled for 75 years. Before initiating this lawsuit, Plaintiff Chestnut Hill NY applied in writing through its counsel on July 18 requesting a meeting with its representatives to discuss a reasonable accommodation so that Plaintiff may continue to provide a family setting in its Group Home as Plaintiff thought was protected by the FHA and ADA. This has not occurred before the City started to move forward to close down the Boarding House.

1

## Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Green, 553 U.S. 674, 689-90 (2008)). "The party seeking the injunction carries the burden of persuasion to demonstrate, 'by a clear showing,' that the necessary elements are satisfied." Reckitt Benckiser Inc. v. Motomco Ltd., 760 F. Supp. 2d 446, 452 (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

Generally speaking, a party must establish four elements to prevail on a motion for a preliminary injunction: (1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest. Chobani, LLC v. Dannon Co., Inc., 157 F. Supp. 3d 190, 199 (N.D.N.Y. 2016) (surveying preliminary injunction case law post-Winter); see also Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 895 (2d Cir. 2015) (incorporating balance-of-hardships and public interest factors); Am. Civil Liberties Union v. Clapper, 785 F.3d 787, 825 (2d Cir. 2015) (same).

## Relevant Statutes

Under the FHA, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). The FHA further provides that it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." § 3604(f)(2).

Likewise, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Both the FHA and the ADA apply to municipal zoning decisions. See, e.g., Forest City Daly Hous., Inc., 175 F.3d at 151. "To establish discrimination under either the [FHA] or the ADA, plaintiffs have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." Tsombanidis v. West Haven Fire Dept., 352 F.3d 565, 573 (2d Cir. 2003).

## Legal Argument

Plaintiffs are applying for a preliminary injunction and TRO that maintains the status quo while the legal issues presented are resolved by the Court. The Group Home at issue is in operation and has been operating for nine (9) years under the supervision of Chestnut Hill NY and prior owners. The lives of many vulnerable people will be dislodged, including Plaintiffs John Doe, if a Restraining Order and Preliminary Injunction does not issue.

Plaintiffs may obtain a preliminary injunction by showing that "(1`) irreparable harm should the injunction not be granted, and (2) ... a likelihood of success on the merits." *Shapiro v. Cadman Towers, Inc.* 51 F3d 328, 332 (2d Cir.1995)

### Plaintiffs are Likely to Succeed on the Merits

Plaintiffs assert violations of Sections 3604(f)(2) and 3617 of the FHA and Section 12132 of the ADA and are highly likely to succeed on these claims at trial. Pursuant to Section 3604(f)(2) of the FHA, it is unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of
> (A) that person; or
> (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
> (C) any person associated with that person.

Section 12132 of the ADA provides that:

> ... no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

In order to establish a prima facie case of discrimination under the FHA and the ADA, "the plaintiff must present evidence that 'animus against a protected group was *a* significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Regional Economic Action Community Program, Inc. (RECAP) v. City of Middletown*, 294 F3d 35, 49 (emphasis in original). "If the motive is discriminatory, it is of no moment that the complained-of conduct would be permissible if taken for nondiscriminatory reasons." *LeBlanc-Sternberg v. Fletcher*, 67 F3d 412, 425-426 (2d Cir. 1995).

## The City of Kingston Has Engaged in Intentional Discrimination in Violation of the Fair Housing Act and ADA

With regard to discriminatory intent claims, plaintiffs may rely on direct evidence, such as open statements evincing animus, or, as is more likely, circumstantial evidence, because "municipal officials ... seldom, if ever, announce on the record that they are pursuing a course of action ... to discriminate." _Smith v. Town of Clarkton, N.C._, 682 F2d 1055, 1064 (4th Cir.1982); see also _Huntington Branch, N.A.A.C.O. v. Town of Huntington,_ 844 F2d 926 (2d Cir. 1988) ("clever men may easily conceal their motivations.") "Discriminatory intent may be inferred from the totality of the circumstances, including ... the historical background of the decision ...; the specific sequence of the events leading up to the challenged decision ...; {and} contemporary statements by members of the decision making body ..." _RECAP v. City of Middletown_, 294 F3d 49. The plaintiffs need only show that the City's actions were in part based on the status of the ... residents as members of a protected group. See _Baxter v. Beleville_, 720 F. Supp. 720, 732 (S.D. Ill.. 1989); see also _United States v. City of Black Jack_, 508 F2d 1179, 1185 n.3 (8th Cir. 1974) (racist statements by "leasers of the incorporation movement" and fact that "racial criticism ... was made and cheered at public meetings" could be considered evidence of improper purpose), cert, denied, 422 U.S. 1042, 45 L. Ed. 2d 694, 95 S. Ct. 2656 (1975).

Once a plaintiff demonstrates that the challenged decision was in part motivated by discriminatory purpose, the burden shifts to the defendant to establish that the same decision would have resulted even if the impermissible purpose had not been considered. See _United States v. Yonkers Board of Education_, 837 F2d 1181, 1217 (2d Cir. 1987) the defendants' justification is scrutinized to determine if it is pretextual because, 'if the motive is discriminatory, it is of no moment that the complained-of conduct would be permissible if taken for non-discriminatory reasons." _LaBlanc-Sternberg v. Fletcher_, 67 F3d 412, 425 (2d Cir. 1995).

As explained below, the record strongly supports a finding that the defendants' decision to close the Group Home was based and continues to be based at least in significant part on discriminatory intent based upon the handicap/disabled status of current and future residents of the Group Home.

## Background of Plaintiffs Management and Ownership of 106 West Chestnut Street

**(The events preceding the management and ownership of 106 W. Chestnut Street are described in the Complaint paragraphs 12 to 36 and are not reiterated herein.)**

Chestnut Hill NY, Inc. has provided family housing to residents in the group home at 106 W. Chestnut St. such as plaintiff Does since October 2014. The people being housed by Chestnut Hill NY have impairments which substantially limit their major life

4

activities, have a record of having such impairments, or are regarded as having such impairments. These people are "handicapped" under the FHA and disabled under the ADA. As a provider of housing for people with mental illness who have been injured by a discriminatory zoning practice, Chestnut Hill, NY is an "aggrieved person" as are Plaintiffs John Doe and the other residents or prospective residents of the subject premises under the FHA, 42 U.S.C. Sec. 3602(i). The FHA makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap..." 42 U.S.C. Sec. 3604(f)(1).

At the present time the house is occupied by Plaintiffs John Does and others. The following individuals (A to M) described in the Affidavit of Plaintiff Sangi paragraph 7, in addition to the two Plaintiffs, are currently some of the residents at 106 W. Chestnut Street. Their names are being kept confidential at this time. While Mr. Sangi is not qualified to provide an official diagnosis, many residents confide in him and most are handicapped, or appear to be handicapped.

These individuals and others residing in the Group Home are qualified individuals with a disability, have a record of such disability or are regarded as having such a disability. All together these individuals choose to live in a family setting in this Group Home. They enjoy living at 106 West Chestnut as explained in the statements from a few of them. See Exhibit 1 attached to Affidavit of Mr. Sangi. They are about to be evicted unless this Court protects their rights under the FHA and ADA.

Curent events have repeated the events that took place in 2015. The handful of community witnesses at the March 20, 2023 public hearing of the Planning Board revealed their bias toward the residents of 106 W. West Chestnut St. by expressing their opposition to the renewal of the Special Permit without any grounds for doing so, even though they are neighbors living near the Boarding Home. One witness showed his bias by blaming the residents for a syringe and liquor bottles found on the street and assumed, without knowing, that it came from 106 W. Chestnut St. Bias was revealed by showing no recognition of the housing shortage in Kingston, and no care for what would happen to the residents once removed from the premises.

Further expression of bias was revealed by an attitude that the disabled did not belong in their neighborhood, and a willingness to accept the truth of an allegation that sex offenders reside in the premises without speaking with Mr. Sangi about this allegation or the police to try to determine the truth of such an allegation. The last speaker exposed her bias by expressing her fear of the residents who might knock at her door without making any effort to determine if that fear was at all justified.

The Planning Board majority revealed its bias by refusing to acknowledge that the maintenance issues had been addressed by Plaintiff Sangi and remedied, most of them immediately. Except for one member, they did not seem to care that Plaintiff had fully cooperated with them, made the repairs, cooperated with the inspection routine, and provided all the information requested.

In a July 17 letter submitted by Plaintiff prior to the meeting from his counsel, he explained that a second follow-up report was sought from Mr.Stinemire, but was not generated by the Engineer. He also explained that no one who inspected the fire escape recommended that its use be discontinued; this included Mr. Stinemire and the Kingston Building Inspector Knox who examined the staircase on July 14.

At the July 17 meeting the Planning Board approved a Resolution that denied renewal of the Special Permit for Chestnut Hill NY, Inc. The Resolution denied the Plaintiff John Does their homes, as well as the balance of the residents at 106 W. Chestnut St. and would deny Mr. Sanji his livelihood.

Plaintiff has addressed all the concerns raised by the Building Department. For example, the Resolution refers to Fire Protection Sys. Section 704.1 noted in an inspection report dated October 20, 2021. Never in nine (9) years before April 2023 was the connection to the USA Central Alarm Station raised by the Building Department as a problem issue. The fire alarm system itself was installed by prior owners of the premises. The connection required in April 2023 was accomplished within one week, and is in place now; on May 1, 2023 a report was submitted by Mathew Hamilton of the Fischer Security and Electric Systems, Inc. in accordance with Applicable NFPA Standards to USA Central Alarm Station, and provided to the City. As stated in the May 15, 2023 e-mail referenced in paragraph 43 of the Complaint, the only remaining issue was the fire escape.

Because Plaintiff provided a home to one additional resident in the carriage house, he is being penalized for overlooking the shortage of 20 square feet for one more "legal" bed. The bed had been removed.

On the recommendation of the Kingston Building Department, Plaintiff engaged Engineer Stinemire in 2021 to inspect the fire escape once the law required reliance upon an Engineer. Prior to then the fire department inspected this staircase for many years. None of the inspections insisted that the staircase cease being used. Plaintiff made all the repairs identified by Mr. Stinemire and provided proof on May 30, 2023 of the final two issues. These repairs only cost a total of $40. It took Mr. Knox 6 weeks to inspect the remedial work that was done despite apparent alleged concern about the safety of the fire escape.

On August 14, 2023 Mr. Stinemire, in response to a plea from Plaintiffs and after yet another inspection, and after the renewal of the Special Permit had been denied, issued a third report stating: "Generally, the steel fire escape was found to be structurally sound at the time of my inspection." This report was forwarded to the Defendants on August 18, soon after Plaintiff received it. This event did not prompt the defendants to offer to meet to try to achieve a reasonable accommodation.

6

The denial Resolution also faults Plaintiff for allowing a resident to sleep in the basement blocking the basement fire escape. No acknowledgment is given that Building Safety, after inspecting the use of a basement bedroom for nine (9) years, had suddenly this year insisted that the bedroom cease being used. One resident refused to leave and took up residency initially on the floor in the basement after the bedroom was boarded up. When Building Safety refused to help get the individual to depart, Plaintiff was compelled to initiate an eviction proceeding, which procedures would only prolong the safety issue. Fortunately, once served with eviction papers, the resident finally departed.

Defendants had no good reason to close down 106 W. Chestnut Street, especially in light of the need in Kingston for places to house the homeless and individuals coping with disabilities and addictions. Chestnut Hill has zero Building Code violations; all alleged violations have been remedied.

By allowing the prejudices of members of the community to influence the Defendants decision to close an operating group home, Defendants have engaged in intentional discrimination on the basis of disability in violation of the FHA and ADA. By denying the opportunity to Chestnut Hill NY to continue to provide housing in an area zoned for residential use, on a site surrounded by other residences, because of the disabilities of the prospective residents, Defendants have violated the FHA and ADA.

In the case of *Support Ministries of Persons with AIDS, Inc. v. Waterford*, 808 F. Supp.120 (N.D. N. Y 1992) the Village officials bowed to the pressure of village residents in opposition to a residence for individuals suffering from AIDS and adjusted the zoning law to keep them out. The Kingston defendants herein acted to clean-out the W. Chestnut St. neighborhood, where some of them lived, of people with mental and physical disabilities who some thought were sex offenders and dangerous without any basis in fact. The value of some of their homes they thought would suffer if the disabled continued to live in the neighborhood. The FHA is enacted directly to protect against this sort of discrimination. "A decision maker has a duty not to allow illegal prejudices of the majority to influence the decisionmaking process. A ... discriminatory act would be no less illegal simply because it enjoys broad public support. Likewise, if an official act is performed simply in order to appease the discriminatory viewpoints of private parties, that act itself becomes tainted with discriminatory intent even if the decision-maker personally has no strong views on the matter." *Association of Relatives and Friends of AIDS Patients*, 740 F.Supp. at 104 (quoted by Stewart B. McKinney Found., Inc., 790 F.Supp. at 1212). *Support Ministries of Persons with Aids, Inc v. Waterford*, 808 F. Supp. at 134-135.

City officials initiated a campaign to rid their neighborhood of a long standing residence for handicap people. The bias and ignorance expressed by neighbors including Alderwoman Brown at the zoning hearing confirmed the motivation for ending the use of these premises for the disabled. As in the Waterford case, the decision to change the zoning status of 106 W. Chestnut St. is an example of a zoning strategy whose true

7

purpose was to disadvantage the handicapped for the benefit of their neighbors. Tri-Serendipity's mighty efforts to fight back on zoning grounds failed. Plaintiffs ask this Court to afford them the protection they believe they are entitled to under the FHA and the ADA from the intentional discrimination they are suffering. Police action has sought to enforce removal procedures before the legality of the matter has been fully resolved, intimidating vulnerable people who wanted only to enjoy the benefits of a comfortable well maintained residence in a safe neighborhood. Plaintiffs fear similar measures are afoot unless the City is enjoined to act until the issues raised in this action are addressed.

### The Defendants Actions will have Discriminatory Impact on the Handicapped

To establish a prima facie case of discrimination under the disparate impact analysis, plaintiffs need to prove "no more than that the conduct of the defendants actually or predictably results in discrimination." Support Ministries of Persons with Aids, Inc. v. Waterford, 808 F. Supp. at 136. "The plaintiff need make no showing whatsoever that the action resulting in .. discrimination in housing was . motivated {by a desire to discriminate against the handicapped.} Effect, and not motivation, is the touchstone." Id. In the present case the defendants course of conduct, rather than facilitating the continued housing of the disabled in an environment they favor, has pushed them out the door and placed them under the threat of eviction. It is not as if the City has determined that the housing at 106 W. Chestnut St. presents a danger to the residents or the neighborhood. An owner is willing to house the handicapped and has housed them for many years in the very same structure that has been inspected and Permitted through the past 4 years. The effect of the decisions made by the Defendants and the enforcement measures they have undertaken in the past will have a profound impact upon disabled persons in violation of the FHA and the ADA while serving no legitimate public purpose.

### Defendants are Obligated to Engage with Plaintiffs to Try to Achieve a Reasonable Accommodation.

Before initiating this lawsuit, Plaintiff Chestnut Hill NY applied in writing to the City on July 18, 2023 for a meeting with its representatives to discuss a reasonable accommodation so that Plaintiff may continue to provide a family setting in its Group Home as Plaintiff thought was protected by the FHA and ADA. This request was not honored. Chestnut Hill NY tried to persuade the City that zoning regulations do not take precedent over the rights of the disabled to have equal access to housing in our communities. City of Edmonds v. Oxford House, Inc., 514 U.S. 725 (1995); Tsombanidis v. West Haven Fire Dept., 352 F3d 565, 580 (2d Cir. 2003). The State Court rulings on what is and is not a non-conforming use does not end the evaluation of whether the residents of 106 W. Chestnut St. are being removed from their home because of their disability. Federal law protects them from such a removal.

## Plaintiffs Chestnut Hill NY and the John Does Will be Irreparably Harmed Because of Defendants Discriminatory Conduct

"Where a plaintiff demonstrates a likelihood of success on the merits of a Fair Housing claim, irreparable injury may be presumed." <u>Forest City Daly Housing, Inc.</u> v. <u>Town of North Hempstead</u>, 175 F3d 144, 153 (2d Cir. 1999); see e.g. <u>Stewart B. McKinney Found. v. Town Planning and Zoning Comm. Town of Fairfield</u>, 790 F. Supp. 1197, 1208 (D. Conn. 1992) see e.g. <u>Gresham v. Widrush Partners, Ltd.</u>, 730 F2d 1417, 1423 (11th Cir. 1984) ("when a plaintiff who has standing to bring suit shows a substantial likelihood that a defendant has violated specific fair housing statutes and regulations, that alone, if unrebutted, is sufficient to support an injunction remedying those violations.") The Plaintiffs' evidence on the merits of the FHA and ADA claims strengthens this presumption and reduces the need for any irreparable harm inquiry. See <u>Sunrise Dev. Inc. v. Town of Huntington</u>, 62 F. Supp. 2d 762, 773 ("[t}he discrimination itself is presumed to cause irreparable harm to its victims.")

If irreparable harm is not presumed, the plaintiffs will be irreparably harmed if the defendants are permitted to use its zoning laws to prevent Chestnut Hill NY from continuing to operate its Group Home for the handicapped. In <u>Stewart B. McKinney Found. v. Town Planning and Zoning Comm. Town of Fairfield</u> at 208 the Court ... explained that the following factors would support an independent finding of irreparable harm: (i) the plaintiff's goal of providing housing to protected group would be "thwarted by each passing day," (ii) a shortage of housing for the protected group; (iii) persons interested in occupying the housing would have to look elsewhere ; and (iv) monetary damages would not adequately compensate plaintiffs for their loss of housing and for Chestnut Hill NY's inability to provide housing for the protected group. All these factors are present here. In addition, the residents and future residents of 106 W. Chestnut St. would be deprived of safe and secure housing opportunities conducive to their wellbeing, with the increased exposure to risk elsewhere, and the diminished possibility to improve their health and lives in a comfortable family setting with the possible consequence that they will be forced to rely on shelters or end up in motels/hotels, on the street or institutionalized.

Furthermore, the central goal of the FHA is to provide equal housing opportunities to individuals with a handicap. See e.g. <u>Meyer v. Holley</u>, 537 U.S. 280, 289-298 (2003). An injunction is necessary to protect the public interest and remedy Defendants' zoning decisions ... which directly affect the availability of housing to {the handicapped}." <u>Bloch</u>

9

v. Frischholz, 587 F3d 711, 777 (7th Cir. 2009) (citing Southern Neighborhood Improvement Assoc. v. County of St. Clair, 743 F2d 1207, 1209 & n.3 (7th Cir. 1984).

Any harm to the City is de minimum. The Group Home is functioning now and allowing it to continue imposes no additional burden on the City. The status quo allows all parties to remain in place while the Court decides if the public interest will be served in accordance with the purpose of the FHA and ADA by allowing the residents of 106 W. Chestnut St. to remain in their home and allow Chestnut Hill Ny to continue to provide them with a suitable place to live.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant its motion for a Temporary Restraining Order and Preliminary Injunction directing the City of Kingston to allow the Group Home at 106 West Chestnut St. to remain in operation and to refrain from any steps to evict the residents, to secure their identities and to remove the plaintiffs and other residents from the premises, pending the final resolution of the merits of this case.

Dated: August 27, 2023
Saugerties, NY

Respectfully submitted,

*Lanny E. Walter*
Lanny E. Walter,
Bar Roll No. 102784
Attorney for Plaintiffs
301 Van Vlierden Rd.
Saugerties, NY 12477
845-246-1959
lanny@lannywalter.com